IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

WILLIAM H. BUCHANAN, JR.,      )
                               )
     Plaintiff,                )
                               )
     v.                        )     1:04CV725
                               )
FAIRFIELD RESORTS, INC.,       )
CENDANT CORPORATION,           )
and CENDANT CORPORATION        )
SEVERANCE PAY PLAN FOR OFFICERS,)
                               )
     Defendants.               )

MEMORANDUM OPINION and ORDER

OSTEEN, District Judge

Plaintiff William H. Buchanan, Jr. ("Plaintiff") originally filed this action in Davie Superior Court against Defendants Fairfield Resorts, Inc. ("Fairfield"), Cendant Corporation ("Cendant"), and Cendant Corporation Severance Pay Plan for Officers ("Severance Plan") (collectively, "Defendants"). Plaintiff claims violations of North Carolina state law and the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. §§ 621 et seq. Before this court is Defendants' joint motion for partial dismissal. For the reasons stated below, the court will grant the motion, in part, and deny the motion, in part.

## I. FACTUAL BACKGROUND

Fairfield employed Plaintiff in 1994. Plaintiff held several positions with Fairfield and eventually with Cendant, an entity that took over Fairfield in 2000. In November 2002, Defendants terminated Plaintiff and immediately replaced him with a younger person.

According to Plaintiff, he was eligible to participate in a severance agreement upon employment termination, and Defendants wrongfully denied his participation in that agreement. Also, Plaintiff alleges Defendants issued stock options that he could exercise only prior to termination. The termination ended his options, and Plaintiff claims the termination was purposefully to terminate his option rights.

From Plaintiff's termination arose his various claims. Under state law, Plaintiff claims Defendants discharged him in violation of North Carolina public policy (Claim 1), breached the severance agreement by not paying him his severance benefits after termination (Claim 3), violated the N.C. Wage and Hour Act by not paying his severance benefits after termination (Claim 4), wrongfully denied his severance benefits (Claim 5), and breached an agreement with Plaintiff when they discharged him to prevent Plaintiff from exercising the stock options (Claim 6). Under federal law, Plaintiff claims Defendants violated the ADEA (Claim

2). Plaintiff alleged two additional claims captioned "respondeat superior" (Claim 7) and "punitive damages" (Claim 8).

**II. ANALYSIS**

Defendants seek to dismiss Severance Plan from the claims for wrongful discharge (Claim 1), breach of contract in discharging to prevent stock option exercise (Claim 6), respondeat superior (Claim 7), and the ADEA claim (Claim 2). Defendants' motion further seeks to dismiss completely the claims for breach of severance agreement and the violation of the N.C. Wage and Hour Act because ERISA completely preempts them. The following discussion considers both in turn.

In considering Defendants' joint motion under Federal Rule of Civil Procedure 12(b)(6), "[such a] motion . . . should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief.'" Gottesman v. J.H. Batten, Inc., 286 F. Supp. 2d 604, 610 (M.D.N.C. 2003) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 94, 102 (1957)). Moreover, the court must construe the facts in the light most favorable to Plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

    A.   Motion to Dismiss Severance Plan from Claims 1, 2, 6, and 7

Plaintiff sued Severance Plan for wrongful discharge in violation of North Carolina public policy and for age discrimination under the ADEA, charging that Severance Plan was

3

responsible for damages under each cause of action.  Plaintiff also claims that Severance Plan breached a contract with Plaintiff and is liable for damages under "respondeat superior." Plaintiff's argument against dismissal is the same for each claim—Severance Plan was "a <u>de facto</u> agent of Fairfield and Cendant" and is liable for damages.  (Pl.'s Response Opp'n Defs.' Mot. Partial Dismissal at 6.)

       1.   Discharge in Violation of N.C. Public Policy

Plaintiff claims that all Defendants wrongfully discharged him in violation of North Carolina's public policy.  North Carolina's law states wrongful termination suits occur between an employer and his employee.  <u>See</u> <u>Amos v. Oakdale Knitting Co.</u>, 416 S.E.2d 166 (N.C. 1992).  Plaintiff claims Severance Plan, who Plaintiff does not state is his employer, is liable for his alleged wrongful termination merely because it is the agent of his employer.  Plaintiff shows no law even suggesting agents are liable for an employee's wrongful termination.  Thus, the motion to dismiss on this count as to Severance Plan will be granted.

       2.   Age Discrimination under the ADEA

Plaintiff claims Severance Plan is an employer under the ADEA.  Only an employee can hold his employer liable under the ADEA.  An employer is "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding

4

calendar year." 29 U.S.C. § 630(b). "The term also means . . . any agent of such a person." Id. Plaintiff argues that because employer includes agent, and the complaint alleges that Severance Plan is an agent, Severance Plan can be liable for an ADEA violation.

This position is contrary to the governing law in this circuit. Section 630(b) does not impose personal liability on the agents of an employer. It is merely "an unremarkable expression of respondeat superior—that discriminatory personnel actions taken by an employer's agent may create liability <u>for the employer</u>." <u>Birkbeck v. Marvel Lighting Corp.</u>, 30 F.3d 507, 510 (4th Cir. 1994) (emphasis added). Thus, only the actual employer may be held liable, not an agent. Since agent Severance Plan cannot be liable under the ADEA, it will be dismissed from the cause of action.

       3.    Breach of Contract

Plaintiff alleges that Fairfield Resorts "promised and agreed to issue stock options to those employees occupying the position of 'Vice President' with the Defendants." (Compl. ¶ 49.) "At a later time and as an inducement for [Plaintiff's] continued employment with them, Defendants ultimately issued options to 10,000 shares of Fairfield Resorts stock to the Plaintiff, which stock options the Plaintiff had a right under his agreement with the Defendants to exercise prior to the

5

termination of his employment." (Id. ¶ 51.) Plaintiff then claims "Defendant discharged the Plaintiff when they did so as to prevent him from exercising all of his stock options." (Id. ¶ 52.)

A primary assumption in any contract action is that only parties to the contract, whether they are original parties or transferees of the contract, may be sued for breach. The facts plainly state that the contract was between Fairfield Resorts and Plaintiff. Severance Plan is not a party to the contract, and Plaintiff does not plead that Severance Plan is a party in any way; it is merely a contractual party's agent. It cannot be held liable for breach of the contract, and the court will grant the motion on this ground.

### 4. Respondeat Superior

Plaintiff pleads respondeat superior as a cause of action. Respondeat superior is not an independent cause of action. It is a doctrine that makes "a master . . . liable in certain cases for the wrongful acts of his servant, and a principal for those of his agent." Black's Law Dictionary 1311-12 (6th ed. 1990). Thus, respondeat superior is only a means to impute liability in some other cause of action. To the extent Plaintiff pleads respondeat superior as a cause of action, that "cause of action" is dismissed.

B.  Motion to Dismiss on Preemption Grounds

Defendants also move to dismiss the claim for breach of severance agreement (Claim 3) and the claim under the N.C. Wage and Hour Act (Claim 4) because the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., preempts those state law claims.  When deciding if federal law preempts state law, the court's "task is to ascertain Congress'[s] intent in enacting the federal statute at issue." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 95, 103 S. Ct. 2890, 2899 (1983).  Congress's intent is plain from the text of ERISA. ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any [ERISA] . . . plan."  29 U.S.C. § 1144(a).  The Court notes this preemption is "expansive." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47, 107 S. Ct. 1549, 1553 (1987).

ERISA preempts a state law when it relates to an employee benefit plan:  "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan."  Shaw, 463 U.S. at 96-97, 103 S. Ct. at 2900.[1]  However, "the simple fact that a defendant is an ERISA plan administrator does not automatically insulate it from state

---

[1] Exceptions to preemption exist, see 29 U.S.C. § 1144(b), but Plaintiff does not argue that any exceptions apply; thus, the only issue is if ERISA preempts Plaintiff's third and fourth causes of action.

7

law liability for alleged wrongdoing against a plan participant or beneficiary." Darcangelo v. Verizon Communications, Inc., 292 F.3d 181, 192 (4th Cir. 2002); see also Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 833, 108 S. Ct. 2182, 2187 (1988) (holding there is no preemption in a "lawsuit[] against ERISA plans for run-of-the-mill state law . . . torts committed by an ERISA plan," even though it "obviously affect[s] and involv[es] ERISA plans and their trustees"). "What triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit." Gresham v. Lumbermen's Mut. Cas. Co., 404 F.3d 253, 258 (4th Cir. 2005) (quoting Aetna Life Ins. Co. v. Borges, 869 F.2d 142, 146-47 (2d Cir. 1989)).

ERISA may preempt state laws in two ways. In "ordinary conflict preemption," or "defensive preemption," the federal law prevents recovery on the state law claim by acting as a federal defense. Darcangelo, 292 F.3d at 187. Thus, the state law cause of action exists, but ERISA preemption provides a defense. In "complete preemption," the claim is such that Congress's intent was for this claim to be a federal cause of action only; thus, no state law cause of action ever exists. Id.

8

Complete preemption is determined through analysis of the state law claims under ERISA's civil enforcement § 502, 29 U.S.C. § 1132. Section 502 allows ERISA plan participants to "enforce [their] rights under the terms of the [ERISA] plan." 29 U.S.C. § 1132(a)(1)(B). When a state law cause of action is an alternative means to enforce plan rights, ERISA's § 502 "convert[s it] into [a] federal claim[]." Darcangelo, 292 F.3d at 187. Thus, the court must treat the state law claim as a federal question claim in a complete preemption case.

In many complete preemption cases, courts allow a complaining party to amend his complaint to state an ERISA cause of action properly. See, e.g., Ellis v. Liberty Life Assurance Co. of Boston, 394 F.3d 262, 269 (5th Cir. 2004) (upholding district court's granting leave to amend complaint when ERISA completely preempted plaintiff's state law claims). In this case, Plaintiff seeks no leave to amend and, rather, argues only that dismissal is disfavored. In the Fourth Circuit, generally, this court cannot dismiss completely preempted state law causes of action because the "completely preempted [claims] were converted into federal claims that need to be decided as federal claims under § 502(a)." Singh v. Prudential Health Care Plan, Inc., 335 F.3d 278, 292 (4th Cir. 2003). Thus, in spite of how the Plaintiff pleads the claims, this court must consider the

9

completely preempted state law claims as federal question ERISA claims and limit the remedies to those in § 502.  Id.

ERISA governs employer breaches of severance plans and completely preempts state law breach of contract claims on such plans.  See Massachusetts v. Morash, 490 U.S. 107, 116, 109 S. Ct. 1668, 1673 (1989) ("[P]lans to pay employees severance benefits, which are payable only upon termination of employment, are employee welfare benefit plans within the meaning of . . . [ERISA]."); Biggers v. Wittek Indus., Inc., 4 F.3d 291, 297 (4th Cir. 1993) ("It is beyond question that plans established by an employer to provide severance benefits are employee welfare benefit plans within the scope of ERISA.").  In Claim 3, Plaintiff claims "Fairfield Resorts and Cendant, as a term and condition of their employment agreements with their employees, promised and agreed to pay severance benefits to eligible employees, such as the Plaintiff."  (Compl. ¶ 35 (emphasis added).)  Plaintiff then alleges Defendants breached this agreement under a state law-based breach of contract theory.  Since this is a severance plan, breach of the plan is exclusively governed by ERISA, and ERISA completely preempts this claim.  Thus, this is a valid claim under ERISA, but Plaintiff is limited to the remedies of § 502.  The court will deny the motion to dismiss for Claim 3.

ERISA also completely preempts state laws "invoked in pursuit of benefits allegedly due under . . . [a] severance pay plan."  Holland v. Burlington Indus., Inc., 772 F.2d 1140, 1147

10

(4th Cir. 1985), summarily aff'd sub nom., Brooks v. Burlington Indus., Inc., 477 U.S. 901, 106 S. Ct. 3267 (1986).  In Holland, N.C. General Statute section 95-25.7 was at issue.  That statute regulates when all payments are due to employees whose employment is "discontinued."  N.C. Gen. Stat. § 95-25.7.  The employee invoked that statute claiming the employer wrongly withheld severance pay money.  772 F.2d at 1144.  The Fourth Circuit held ERISA completely preempted the claim based on the state statute to the extent Plaintiff "invoked [it] in pursuit of benefits allegedly due under . . . [a] severance pay plan."  Id. at 1147.

In Claim 4, Plaintiff asserts Defendants "improperly withh[eld] payment of the Plaintiff's severance pay benefits" under N.C. General Statute section 95-25.8, (Compl. ¶ 41), which regulates when employers "may withhold or divert any portion of an employee's wages,"  N.C. Gen. Stat. § 95-25.8.  As in Holland, Plaintiff is using the state statute to seek "benefits allegedly due under . . . [a] severance pay plan."  772 F.2d at 1147. ERISA completely preempts such causes of action, and this court must treat that claim as a federal cause of action.  Plaintiff is limited to § 502's remedies, but the court cannot dismiss the cause of action for failure to state a claim.  The court will deny the motion for Claim 4.

**III. CONCLUSION**

For the reasons set forth above,

IT IS ORDERED that Defendants Fairfield Resorts, Inc.'s, Cendant Corporation's, and Cendant Corporation Severance Pay Plan

11

for Officers' joint motion for partial dismissal [6] is GRANTED in part and DENIED in part.  The court grants the motion dismissing Cendant Corporation Severance Pay Plan for Officers from Claims 1, 2, 6, and 7.  The court denies the motion for the remaining grounds.

This the 25th day of November 2005.

                                          /s/ William L. Osteen
                                        United States District Judge